IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Abdiyyah ben Alkebulanyahh,<br>#SK6012, a/k/a Tyree Alphonso Roberts,<br>　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>Jon Ozmint and Stan Burtt,<br>　　　　　　　　　　　　Defendants. | Civil Action No. 6:07-3219-MBS-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

　　　　This matter is before the court on the defendants' motion for summary judgment. The plaintiff, a state prisoner who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights have been violated.

　　　　Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

　　　　On December 5, 2008, the two remaining defendants in this action, Jon Ozmint, the Director of the South Carolina Department of Corrections ("SCDC"), and Stan Burtt, the former Warden of Lieber Correctional Institution, filed a motion for summary judgment. By order filed on December 8, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 5, 2009, the plaintiff filed his opposition to the motion for summary judgment.

**FACTS PRESENTED**

The plaintiff is an inmate who has been sentenced to death and has been housed since October 2003 on Death Row, which is located at Lieber Correctional Institution. The plaintiff has brought this action pursuant to Section 1983 challenging the suspension of his visitation privileges. The plaintiff alleges that his visitation privileges have been suspended until November 4, 2010.

Since March 2004, the plaintiff has received 13 major disciplinary convictions while on Death Row. For 11 of those offenses, he has received a suspension of his visitation privileges as a sanction or punishment. On March 25, 2004, the plaintiff received a suspension of his visitation for 365 days. From March 25, 2005 through June 6, 2005, his visitation privileges were reinstated. During that time he received one visit from his parents (Alice Mascio aff. ¶¶ 3-4, ex. A). On June 6, 2005, his visitation privileges were suspended for a disciplinary infraction. Over the course of the next 16 months, from June 2005 through October 2006, the plaintiff was convicted of 10 major disciplinary offenses (Dennis Patterson aff., ex. A, B). Each of those convictions resulted in the loss of visitation privileges. The visitation suspensions – which ranged in length from 60 days to 365 days each – were applied consecutively meaning that the plaintiff, as a result of those 10 disciplinaries, will have his visitation privileges suspended until November 4, 2010 (Mascio aff., ex. A).

In his complaint, the plaintiff alleges that the denial of visitation privileges until November 4, 2010, violates his constitutional rights. The plaintiff has not specifically stated what rights he claims have been violated. He has sued Jon Ozmint, the SCDC Director, and Stan Burtt, the former Warden at Lieber Correctional Institution. Defendant Burtt left his employment with SCDC on December 31, 2007 (Katherine Litton aff. ¶ 2). The plaintiff seeks injunctive relief in the form of a court order allowing visitation by his family. He also seeks a monetary award not for himself but rather for his parents and daughter.

Section 18 of that SCDC Policy governs inmate visitation suspensions. Section 18.3 specifically provides as follows:

> When an inmate in General Population or Death Row has had his/her visitation privileges suspended for more than one (1) year, the Warden may, upon the inmate's completion of the first year of suspension, consider the inmate for reinstatement of visitation privileges. The inmate must request this reinstatement on SCDC Form 19-11 after s/he has served the first year of the suspension time. The Warden will consider the inmate's disciplinary record and institutional adjustment when making the decision to reinstate the visitation privileges. If the request is denied, the inmate may reapply one (1) year after the disapproval date.

(McKither Bodison aff., ex. A). McKither Bodison, who is the current Warden at Lieber Correctional Institution, has testified that he "reviewed the institutional file for Inmate Alkebulanyahh, and no request for reinstatement of visitation privileges pursuant to Section 18.3 could be found" (Bodison aff. ¶ 3).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that

a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

In his complaint, the plaintiff does not specify the nature of his constitutional challenge. He alleges in a general manner that "the deprivation of visitation right to see my family and children is unconstitutional and a clear show of savagery and racism of the government and employees of the State" (comp. at 4).

*Due Process*

The defendants argue that in the event the plaintiff is claiming a violation of due process, the claim fails as a matter of law. "To prevail on either procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). It has been noted that the "substantive component of the due process clause protects against only the most egregious, arbitrary governmental conduct – that is, conduct that can be said to 'shock[] the conscience.'" *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001) (citation omitted). The clause is invoked only "when a Fourteenth Amendment-protected liberty interest is at stake." *Berrier v. Allen*, 951 F.2d 622, 624 (4th Cir. 1991). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States. The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original prison sentence." *Id.* The Supreme Court has recognized that the "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." However, these liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted).

In *White v. Keller*, 438 F. Supp. 110 (D. Md. 1977), the district court held that "there is no absolute right to prison visitation." *Id.* at 114. The court further concluded that "there is no constitutional right to prison visitation, either for prisoners or visitors." *Id.* at 115. *See White v. Keller*, 588 F.2d 913, 914 (4th Cir. 1978). In *Kentucky Department of*

5

*Corrections v. Thompson*, 490 U.S. 454 (1989), the United States Supreme Court held, "The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause." *Id.* at 461 (citation omitted). Moreover, a federal district court concluded that "[n]either prisoners nor their family members have an inherent constitutional right to visitation" because "[a]n inability to receive visitors is not atypical and unusually harsh compared to the ordinary circumstances contemplated by a prison sentence." *Africa v. Vaughn*, C.A. No. 96-0649,1996 WL 65445, \*\*1-2 (E.D. Pa. 1996). Thus, as argued by the defendants, prison visitation does not implicate the standard set forth in *Sandin v. Conner*, 515 U.S. 472 (1995).

The defendants argue that even if this court were to conclude that there is a constitutional right to prison visitation, the plaintiff's due process claim (assuming such a claim was pleaded) would fail. This court agrees. The plaintiff only received visitation suspensions as a direct result of major disciplinary convictions (Patterson aff. ¶ 3). His visitation privileges were suspended from March 23, 2004, through March 25, 2005, and then again from June 6, 2005, through present. The plaintiff is presently not scheduled to receive the reinstatement of his visitation privileges (unless reinstated by the Warden under Section 18.3) until November 4, 2010 (Mascio aff. ¶¶ 3-6). However, it is undisputed that the plaintiff received notice of the charges, a hearing, and the opportunity to appeal his conviction on each of those 11 major disciplinary convictions (Patterson aff., ex. A, B). Consequently, he has received due process before any suspension of visitation was enforced. Thus, even if a liberty interest is implicated, the plaintiff did receive due process. He has not been subjected to "an atypical and unusually harsh" condition without due process. Based upon the foregoing, this claim fails.

*Eighth Amendment*

In the case of *Overton v. Bazzetta*, 539 U.S. 126 (2003), the United States Supreme Court upheld a prison policy barring visitation in an effort to encourage good behavior in high security inmates. The Court addressed a prison visitation ban where an inmate may apply for but is not guaranteed reinstatement after two years. The reinstatement is at the warden's discretion. *Id.* at 130. The Court found that such a policy did not violate the Eighth Amendment's prohibition on cruel and unusual punishment. The Court explained that "[t]he restriction undoubtedly makes the prisoner's confinement more difficult to bear. But it does not, in the circumstances of this case, fall below the standards mandated by the Eighth Amendment." *Id.* at 136. The Court recognized that many states "use[] withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. This is not a dramatic departure from accepted standards for conditions of confinement." *Id.* at 137. The Court also explained that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." *Id.* at 134.

As pointed out by The Honorable Margaret B. Seymour, United States District Judge, in her order finding that summary dismissal of the plaintiff's case was inappropriate, the Court in *Overton* did leave open questions regarding a "de facto" permanent ban or a ban of a much longer duration or where a suspension of privileges was arbitrarily applied. The Court explained that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period ... the case would present different considerations." *Overton*, 539 U.S. at 134. Importantly, the Court in *Overton* does not address those issues or even suggest what would or would not be constitutional. The Court did not set forth any black-line test or standard for determining how long visitation privileges may be suspended without being deemed a "de facto" permanent ban.

The present case does not present a permanent ban or a "de facto" permanent ban. The plaintiff is and has been in complete control of when his visitation privileges would be reinstated. By correcting his behavior and ceasing the multitude of major disciplinary infractions that he committed on Death Row since March 2004, he would not have had his privileges suspended for as long as they are currently. It is also important to recognize that SCDC has not suspended the plaintiff's visitation privileges for any one offense for more than 365 days. Since March 2004, he has received as disciplinary sanctions the loss of visitation for periods of 60 days through 365 days. Specifically, he has received the one year sanction three times, 180 days on six occasions, 90 days once, and 60 days once. Those sanctions have been applied consecutively. If those sanctions were not applied consecutively, the plaintiff would have no motivation to correct his behavior. There would be no additional sanction for the bad behavior. It is the combination of 11 major disciplinary convictions committed over a short period of time that has resulted in the suspension of the plaintiff's visitation privileges for more than a two-year period.

### *Qualified Immunity*

Furthermore, the defendants are protected by qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was

clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

As discussed above, the Supreme Court in *Overton* left open questions regarding a "de facto" permanent ban or a ban of a much longer duration or where a suspension of privileges was arbitrarily applied. Further, the courts in the Fourth Circuit have routinely held that there is no constitutional right to prison visitation. *See e.g., White v. Keller*, 438 F. Supp. 110, 114-15 (D. Md. 1977), aff'd 340 F.2d 913 (4th Cir. 1978); *Wright v. Vitale*, C.A. No. 91-7539, 1881 WL 127597, *1( 4th Cir. 1991). The Supreme Court in *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), found that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause." *Id.* at 461 (citation omitted). Based upon the foregoing, the defendants did not violate "*clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818 (emphasis added).

***Standing***

In his complaint, the plaintiff seeks money damages only for others than himself. He has prayed for a judgment of $19 million dollars to be paid to his parents and his oldest child, Lotoya Heyward (comp. ¶ 2). As argued by the defendants, the plaintiff lacks standing to seek any relief, including monetary relief, for non-parties.

9

"Article III of the United States Constitution limits federal courts to resolving actual cases and controversies." *Burke v. City of Charleston*, 139 F.3d 401, 404 (4th Cir. 1998) (citation omitted). "A justiciable case or controversy requires a plaintiff who has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Planned Parenthood of South Carolina, Inc. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004). Therefore, "to establish standing, a plaintiff must show (1) an actual or threatened injury (2) that was caused by the putatively illegal conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In addition to these constitutional requirements for standing, there are also prudential concerns that are considered. *See id.* at 789 ("standing doctrine is an amalgam of prudential as well as constitutional concerns") (citation omitted). As one of the chief prudential principles, the United States Supreme Court has held that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

As argued by the defendants, while the plaintiff has standing to pursue his own claims against the defendants arising from the suspension of his visitation privileges and how it is enforced, he may not assert a claim on behalf of his parents or his daughter. The plaintiff cannot seek relief for third parties nor base his claim on any effect, damage, or harm to third parties. Only those third parties have legal standing to pursue a violation of their own constitutional rights.

### *Defendant Burtt*

Defendant Stan Burtt is no longer the Warden at Lieber Correctional Institution having left that position on December 31, 2007 (Litton aff. ¶ 2). Because he is no longer

an SCDC employee, Burtt has no current or future authority over the plaintiff or the conditions of his confinement or the enforcement of any policies and procedures. As a result, the defendant Burtt is not a proper party-defendant against whom the plaintiff's claim for injunctive relief should be directed.

### *Official Capacity*

Lastly, to the extent that the plaintiff's complaint is construed as suing the defendants in their official capacities, they are not proper parties in any action brought pursuant to 42 U.S.C. § 1983. In their official capacities, the defendants were acting as state officials and were, accordingly, the alter ego of the State of South Carolina. "Official capacity suits ... genuinely represent only another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). In other words, a state official sued in his official capacity is the alter ego of the State of South Carolina, and as such, is not subject to suit pursuant to 42 U.S.C. § 1983 because the state is not a "person" amenable to suit for monetary damages under § 1983. *Will v. Michigan State Police*, 491 U.S. 58, 71 (1989). Consequently, to the extent that the plaintiff has asserted a Section 1983 claim against the defendants in their official capacities, that claim must be dismissed.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 36) be granted.

s/William M. Catoe
United States Magistrate Judge

March 26, 2009
Greenville, South Carolina