IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Abdiyyah ben Alkebulanyahh, #SK6012, )
a/k/a Tyree Alphonso Roberts, )
 )
      Plaintiff, ) C/A No. 6:07-3219-MBS-WMC
 )
vs. )
 ) **O R D E R**
Jon Ozmint and Stan Burtt, )
 )
      Defendants. )
 )

Plaintiff Abdiyyah ben Alkebulanyahh is an inmate in the custody of the South Carolina Department of Corrections ("SCDC"). On September 26, 2007, Plaintiff, appearing *pro se* and proceeding *in forma pauperis* filed an action against Defendants Jon Ozmint, Stan Burtt, Mark Sanford, and George W. Bush, pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Compl.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge William M. Catoe for pretrial handling. On October 3, 2007, prior to service of process on Defendants, the Magistrate Judge filed a Report and Recommendation in which he recommended that Plaintiff's claim be dismissed without prejudice. Report and Recommendation. This court adopted the Magistrate Judge's recommendation with regards to Defendants Sanford and Bush. Entry 10. However, this court held that Plaintiff's action against Defendants Ozmint and Burtt should be allowed to proceed. The court then recommitted this action to the Magistrate Judge for further proceedings. Id.

On December 5, 2008, Defendants Ozmint and Burtt filed a motion for summary judgment. Notice of Mot. and Mot. for Summ J.; Memo. in Support of Mot. for Summ. J. On December 8,

2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response in opposition to Defendants' motion on January 5, 2009. Resp. to Defs.' Mot. for Summ. J. Defendants did not file a reply.

On March 26, 2009, the Magistrate Judge filed a Report of Magistrate Judge in which he recommended that Defendants' motion be granted. Rep. of Mag. J. Plaintiff filed objections to the Report of Magistrate Judge on April 13, 2009. Resp. to Rep. of Mag. J.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report of Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are set out in detail in the Report of Magistrate Judge and shall only be summarized here. Plaintiff has been housed on South Carolina's "Death Row," located at the Lieber Correctional Institution ("LCI") near Ridgeville, South Carolina, since October 23, 2003. See Memo. in Support of Mot. for Summ. J. 1. Since his arrival at LCI, Plaintiff has received fourteen major disciplinary convictions. Aff. of Dennis R. Patterson, Sr. ¶ 2 [hereinafter Patterson Aff.]. Eleven of these

convictions have resulted in a suspension of Plaintiff's visitation privileges as a punishment.[1] Id. at ¶ 3. On March 20, 2004, Plaintiff committed an infraction categorized as "sexual misconduct." Id., Ex. A at 2. As a result of this infraction, Plaintiff's visitation rights were suspended for 365 days. Aff. of Alice Mascio ¶ 3 [hereinafter Mascio Aff.]. On March 25, 2005, the revocation period ended and Plaintiff's visitation privileges were reinstated. Id. at ¶ 4 & Ex. A at 1.

On June 4, 2005, Plaintiff committed another "sexual misconduct" infraction. Patterson Aff., Ex. A at 1. This infraction resulted in another 365-day suspension of visitation privileges, from June 23, 2005 through June 23, 2006. Mascio Aff., Ex. A at 1. Since the June 2005 conviction for "sexual misconduct," Plaintiff has been convicted of nine other major disciplinary offenses. Patterson Aff., Ex. A at 1; Mascio Aff. ¶ 5. These convictions resulted in the further revocation of Plaintiff's visitation privileges. Revocations were applied consecutively; thus, Plaintiff is not scheduled to have his visitation privileges reinstated until November 4, 2010. Mascio Aff. ¶ 6.

Plaintiff filed the instant suit alleging a violation of the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Compl. 2. Plaintiff seeks to have his visitation privileges reinstated. Id. at 5. If Plaintiff is executed prior to the reinstatement of his visitation privileges, he requests that his parents and oldest daughter, Lotoya Heyward, be awarded $19,000,000. Id. Plaintiff reduces this monetary request to $11,000,000 if he is granted a new trial or is afforded habeas corpus relief. Id. Finally, Plaintiff requests an attorney to "perfect

---

[1] Section 18 of the South Carolina Department of Corrections Policy/Procedure [hereinafter SCDC Policy/Procedure] establishes the authority for the revocation of an inmate's visitation privileges as well as the means by which said privilege can be reinstated. See Aff. of McKither Bodison 26 [hereinafter McKither Aff.].

3

this complaint." Id.[2]

## II. DISCUSSION

FED. R. CIV. P. 56(c) provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving

---

[2] Plaintiff lodges numerous objections to the Magistrate Judge's recitation of the facts. It is claimed that the Magistrate Judge committed error by failing to note that Plaintiff was sentenced to death under the "United States Anti-Terrorism Death Penalty Act." Resp. to Rep. of Mag. J. 1-2. Plaintiff claims this distinction is critical for it indicates that his case may not be resolved prior to his execution. Id. at 2. However, the Magistrate Judge clearly indicates that Plaintiff has been "sentenced to death" and is being housed on South Carolina's "Death Row." Rep. of Mag. J. 2. That the Magistrate Judge did not highlight the specific statute does not mean that either he or this court fail to understand the time sensitive nature of Plaintiff's arguments. Next, Plaintiff claims that the summary of his disciplinary infractions are "lies" because Plaintiff never was presented with documentation of said infractions and subsequent convictions. Resp. to Rep. of Mag. J. 3. However, the veracity of such convictions is evidenced by the original documentation attached to Defendants' instant motion. See e.g. Patterson Aff., Ex. B. Plaintiff further questions the findings of the Magistrate Judge, by alleging that Plaintiff never requested reinstatement of his visitation privileges, and therefore, any reinstatement of said privileges by prison officials violated Section 18 of SCDC Policy/Procedure. Resp. to Rep. of Mag. J. 3-6. However, the evidence clearly indicates that Plaintiff's visitation privileges were reinstated on March 25, 2005, not because of a petition by Plaintiff, but rather, because the 365 day period of suspension had lapsed. Aff. of Alice Mascio ¶ 4 & Ex. A at 1. Finally, Plaintiff objects to the Magistrate Judge's statement that Plaintiff failed to specifically state what constitutional rights Defendants are alleged to have violated. Resp. to Rep. of Mag. J. 6. While Plaintiff did make passing reference in his complaint to what constitutional amendments he believes Defendants violated, such reference is not specific. This court finds no error in the Magistrate Judge's summary of the facts.

that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id. Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Maryland Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

Due Process

The court construes Plaintiff's claim of a Fourteenth Amendment violation as alleging a violation of the Due Process Clause. See Compl. 2. The Magistrate Judge found that there exists no constitutional right to prison visitation, and that even if such a right existed, Plaintiff was afforded due process prior to the revocation of his visitation privileges. Rep. of Mag. J. 5-6. Plaintiff objects to this determination, claiming that he was not afforded procedural and substantive due process. Resp. to Rep. of Mag. J. 9-10.

For an individual "to prevail on either a procedural or substantive due process claim, [he] must first demonstrate that [he was] deprived of 'life, liberty, or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Further, "[t]he safeguards of the Due Process Clause are triggered only when a Fourteenth Amendment-protected liberty interest is at stake." Berrier v. Allen, 951 F.2d 662, 624 (4th Cir. 1991). For lawfully convicted inmates, the Due Process Clause "confers only a very limited range of protected liberty" and "its substantive protection extends only to punishment and conditions of confinement not contemplated by the original prison

5

sentence." Id. However, for prisoners, "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Such state-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations omitted). However, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." Id. at 482.

The Fourth Circuit has recognized that "there is no absolute right to prison visitation," White v. Keller, 438 F. Supp. 110, 114 (D. Md. 1977), aff'd 588 F.2d 913 (4th Cir. 1978), nor is there a "constitutional right to prison visitation, either for prisoners or visitors," id. at 115. The Supreme Court has found that "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.'" Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)). This lack of a constitutional right to visitation extends to prisoners sentenced to death. See Wrinkles v. Davis, 311 F. Supp. 2d 735, 740 (N.D. Ind. 2004) (finding that visitation privileges for inmates sentenced to death are subject to the discretion of prison officials); Hill v. Wash. State Dep't of Corr., 2009 WL 891947, *9 (W.D. Wash. Mar. 31, 2009) (citing Harris v. Murray, 758 F. Supp. 1114, 1116 (E.D. Va. 1991) (applying, to an inmate sentenced to death, the rule that prisoners do not possess a constitutional right to visitation).

As Plaintiff does not have a liberty interest in having visitation privileges, the revocation of such privileges cannot be found to be in violation of the Due Process Clause. Further, other courts

in this jurisdiction have determined that states do not create a Sandin liberty interest in allowing prisoners to receive visitors. See Dunford v. McPeak, 2008 WL 204481, *2 (W.D. Va. Jan. 24, 2008) (finding that the loss of prison visitation privileges is within the normal range of custody and therefore not creating a liberty interest under Sandin). A review of the relevant portions of the SCDC Policy/Procedure lead this court to similarly conclude that South Carolina has not created a Sandin liberty interest with its prison visitation policy. This court agrees with the Magistrate Judge that there is no constitutional right to prison visitation, and as such, Defendants did not deprive Plaintiff of a protected liberty interest. Further, because Plaintiff has not been deprived of a cognizable constitutional right, per Beverati, Plaintiff's procedural due process claim also fails.

Eighth Amendment

Plaintiff claims that the revocation of his visitation privileges violates the Eighth Amendment. Compl. 2. This alleged violation is based on Plaintiff's belief that he may be executed before his visitation rights are reinstated, and thus is being subjected to a *de facto* permanent ban on visitation. Resp. to Rep. of Mag. J. at 11-13. The Magistrate Judge found that this revocation did not constitute a *de facto* permanent ban, and thus, did not violate the Eighth Amendment. Rep. of Mag. J. 7-8. Plaintiff has filed numerous objections to this determination. Resp. to Rep. of Mag. J. 11-13.

In Overton v. Bazzetta, 539 U.S. 126 (2003), the Supreme Court found that the withdrawal of visitation privileges "is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." Id. at 134. The Court recognized that restriction on visitation "undoubtedly

makes the prisoner's confinement more difficult to bear. But it does not, in the circumstances of this case, fall below the standards mandated by the Eighth Amendment." Id. at 136. However, the Court noted that if such a restriction on visitation constituted a "de facto permanent ban," rather than finite period of revocation, or that the revocation was applied in an arbitrary manner, then the Eighth Amendment may become implicated. See id. at 134, 137.

Although the Fourth Circuit has not addressed this issue subsequent to Overton, numerous other Courts of Appeals have upheld prison policies that could be said to constitute some sort of permanent deprivation. See Henry v. Dep't of Corr., 131 F. App'x 847, 849-50 (3d Cir. 2005) (finding that a permanent ban on a particular type of visit did not violate the prisoner's Eighth Amendment rights); Stojanovic v. Humphreys, 309 F. App'x 48, 52 (7th Cir. 2009) (affirming the dismissal of a prisoner's Eighth Amendment claim against prison officials who prohibited visits by the prisoner's daughter and niece); Ricco v. Conner, 146 F. App'x 249, 254 (10th Cir. 2005) (holding that, in light of Overton, a five-year visitation restriction did not violate the Eighth Amendment). While not binding on this court, these findings are persuasive.

As the Magistrate Judge notes, Defendants in the instant matter did not restrict Plaintiff's visitation privileges, in the strict sense of the word, permanently. Rep. of Mag. J. 8. Instead, Defendants restricted said privileges for a period of no longer than 365 days for every infraction, and applied each sentence consecutively. Id. In Overton, the Court questioned whether the visitation revocation was permanent due to the fact that reinstatement of visitation privileges was not automatic, but rather, was at the discretion of the prison's warden. 539 U.S. at 129, 134. But in the instant matter, Plaintiff has previously had his visitation privileges automatically reinstated when the period of revocation elapses. See supra note 2. This procedure forecloses Defendants from having

8

the ability to make Plaintiff's revocation of visitation privileges truly permanent. Thus, this court finds that revocation of Plaintiff's visitation privileges does not constitute a *de facto* permanent ban. Even if this court were to find that Defendants actions constituted a *de facto* permanent ban, Plaintiff's Eighth Amendment claim would still fail as the punishment at issue is less severe, in both scope and severity, than those given in Henry, Stojanovic, and Ricco.

Plaintiff objects to procedures by which Defendants revoked his visitation privileges. Resp. to Rep. of Mag. J. at 11, 13. However, as this court has determined that Plaintiff was not subject to a constitutional deprivation, his procedural due process argument fails. See Beverati, 120 F.3d at 502.

Qualified Immunity

The Magistrate Judge found that Defendants have immunity from suit in the instant matter. Rep. of Mag. J. 7-8. Plaintiff objects claiming Defendants "knew and know they are wrong" and were indifferent to Plaintiff's constitutional protections. Resp. to Rep. of Mag. J. 14.

In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). In Saucier v. Katz, 533 U.S. 194, (2001), the Supreme Court established a two-step analysis for evaluating claims of qualified

immunity. First, it must be determined if "the facts alleged show the . . . conduct violated a constitutional right." Id. at 201. If no constitutional right was violated, the inquiry ceases. Id. However, if a constitutional violation can be found by the court, "the next, sequential step is to ask whether the right was clearly established." Id. Such a determination was said to be made "in light of the specific context of the case, not as a broad general proposition." Id. Citing a desire for greater flexibility, the Supreme Court recently held that the sequential two-step analysis of Saucier is no longer mandatory. Pearson, 129 S. Ct. at 821. But while no longer mandatory, Pearson "does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Id.

Having already determined that Defendants' actions did not violate the Eighth or Fourteenth Amendments, this court sees no need to depart from the Saucier two-step analysis. As such, this court agrees with the Magistrate Judge that Defendants are not liable for civil damages due to the doctrine of qualified immunity.

Plaintiff objects to the portions of the Report of the Magistrate Judge dealing with standing, official capacity, and the employment status of Defendant Burtt. Resp. to Rep. of Mag. J. 15-17. However, this court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

The court has carefully reviewed the record and concurs in the recommendation of the Magistrate Judge. The court adopts the Report and Recommendation and incorporates it herein by reference. Defendants' motion for summary judgment (Entry 36) is **granted**.

**IT IS SO ORDERED**.

s/Margaret B. Seymour<br>United States District Judge

Columbia, South Carolina
July 13, 2009